FILED
U.S. DISTRICT COURT

2012 FEB 14  P 4. 16

DISTRICT OF UTAH

BY:_____
    DEPUTY CLERK

Paul Peters
P.O Box 790826
Paia, HI 96779
Telephone: (808) 446-6535
E-Mail: petersesq@msn.com

---

## In the United States District Court
## For the District of Utah

---

| | |
|---|---|
| Burbidge Mitchell & Gross, a general partnership, | **DEFENDANT PAUL PETERS' ANSWER, COUNTERCLAIM AND THIRD PARTY COMPLAINT** |
| Plaintiffs, | |
| -vs- | |
| Timothy Olson, an individual; Kenneth W. Griswold, an individual; Paul H. Peters, an individual; C and M Properties, LLC, a Utah limited liability company; High Mountain Partners, LLC, a Utah limited liability company; JJRRNL Trust 1998 Defendants. | Hon. Dee V. Benson |
| | Case No. 2:11 cv00640DB |
| Paul Peters, an individual Counterclaimant, | Jury Trial Demanded |
| -vs- | |
| Burbidge Mitchell & Gross, a general partnership; and Does 1-10, Counterclaim Defendant. | |

Paul Peters, an individual
Third Party Plaintiff

-vs-

Raymond O. Klein, an individual;
Richard D. Burbidge, an individual;
Jefferson W. Gross, an individual; and
Does 1-10 Third Party Defendants.

Defendant Paul Peters in response to plaintiff Burbidge Mitchell & Gross ("BMG")'s Complaint specially appears and submits his Amended Answer, Counterclaim and Third Party Complaint and preliminarily admits, denies, affirmatively alleges and complains a follows:

The Defendant responds to the individually-numbered paragraphs of the Complaint in like-numbered paragraphs upon information and belief as follows:

1.     Defendant denies all characterizations but preliminarily denies the factual averments of this paragraph subject to the reservation of their rights to supplement, amend or withdraw such admission(s) as the litigation proceeds.

2

2.      Defendant admits that Olson is a resident of Arizona and denies all characterizations and other allegations and inferences in connection with this paragraph and affirmatively alleges that Olson is domiciled in the state of Arizona.

3.      Defendant denies all characterizations but admits the factual averments of this paragraph on information and belief subject to the reservation of their rights to supplement, amend or withdraw such admission(s) as the litigation proceeds and affirmatively alleges that Kenneth W. Griswold is domiciled in the state of California.

4.      Defendant denies all characterizations but preliminarily admits the factual averments of this paragraph subject to the reservation of their rights to supplement, amend or withdraw such admission(s) as the litigation proceeds and affirmatively alleges that Paul H. Peters is domiciled in the state of Hawaii.

5.      Defendant admits that C&M was formed as a limited liability company in Utah but denies all characterizations and other allegations and inferences of the paragraph and affirmatively alleges that C&M is domiciled in the state of Arizona.

6.      The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and

3

so denies the same on that basis.

7.      The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis.

8.      The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis.

9.      The Defendant denies the averments of the paragraph and affirmatively alleges the allegations in the Notice of Removal which are incorporated hereat in their entirety.

10.     The Defendant denies the averments of the paragraph and affirmatively alleges the allegations of the Notice of Removal which are incorporated hereat in their entirety.

11.     The Defendant denies the averments of the paragraph and affirmatively alleges the allegations of the Notice of Removal which are incorporated hereat in their entirety.

12.     The Defendant is informed, and therefore believes, that C&M was formed to develop certain real property located in Summit County, Utah near the Canyons Ski Resort but denies all characterizations and other allegations and inferences in connection with the paragraph.

13.   The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis.

14.   The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis.

15.   The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis.

16.   The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis.

17.   The Defendant denies all characterizations but preliminarily admits the factual averments of this paragraph subject to the reservation of their rights to supplement, amend or withdraw such admission(s) as the litigation proceeds.

18.   The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis.

19.   The Defendant is without sufficient knowledge and information to

form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis.

20.     The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis.

21.     The Defendant preliminarily admits that some form of written agreement entitled "Agreement to Manage and Protect the Assets of C&M" was entered into by its signatory parties and that such written agreement speaks for itself but denies all characterizations and other allegations and inferences in connection with this paragraph.

22.     The Defendant preliminarily admits that a written agreement entitled "Agreement to Manage and Protect the Assets of C&M" was entered into by its signatory parties and that such written agreement speaks for itself but denies all characterizations and other allegations and inferences in connection with this paragraph.

23.     The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

24.     The Defendant denies all characterizations but preliminarily admits the factual averments of this paragraph subject to the reservation of their

rights to supplement, amend or withdraw such admission(s) as the litigation proceeds.

25.     The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

26.     The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

27.     The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis but affirmatively alleges that the record of the bankruptcy case speaks for itself.

28.     The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis but affirmatively alleges that the record of the bankruptcy case speaks for itself.

29.     The Defendant incorporates by this reference all of their responses to the other averments, allegations and paragraphs of the Complaint, as if fully set forth hereat.

30.     The Defendant preliminarily admits that Exhibit A attached to the

Complaint is a genuine copy of an original document and that it speaks for itself but denies all other allegations and inferences of the paragraph.

31.     The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

32.     The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

33.     The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

34.     The Defendant is without sufficient knowledge and information to form a belief as to the truth of the averments set forth in this paragraph and so denies the same on that basis but affirmatively alleges that the record of the bankruptcy case speaks for itself.

35.     The Defendant preliminarily admits that Exhibit B attached to the Complaint is a genuine copy of an original document and that it speaks for itself but denies all other allegations and inferences of the paragraph.

36.     The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the

Complaint's Prayer for Relief.

37.    The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

38.    The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

39.    The Defendant incorporates by this reference all of their responses to the other averments, allegations and paragraphs of the Complaint, as if fully set forth hereat.

40.    The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

41.    The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

42.    The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

43.    The Defendant denies all averments, characterizations and other

allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

44.    The Defendant incorporates by this reference all of their responses to the other averments, allegations and paragraphs of the Complaint, as if fully set forth hereat.

45.    The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

46.    The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

47.    The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

48.    The Defendant denies all averments, characterizations and other allegations and inferences of this paragraph as well as all paragraphs of the Complaint's Prayer for Relief.

49.    The Defendant denies each and every averment, allegation, characterization and inference in or derivable from the Complaint not heretofore expressly, affirmatively, clearly, entirely, completely,

unambiguously, unequivocally, unqualifiedly, unreservedly and unmistakably admitted.

Defendant affirmatively asserts, alleges and complains the following defenses:

### FIRST DEFENSE

The Complaint fails to state a claim on which relief can be granted.

### SECOND DEFENSE

The Complaint is barred as asserted for improper purpose with ulterior motion and constitutes abuse of process and/or fraud upon the Court.

### THIRD DEFENSE

The Complaint is barred, in whole or in part, by BMG's bad faith.

### FOURTH DEFENSE

The Complaint is barred, in whole or in part, by BMG's failure to mitigate its damages, if any damages in fact exist.

### FIFTH DEFENSE

The Complaint is barred, in whole or in part, by waiver.

### SIXTH DEFENSE

The Complaint is barred, in whole or in part, by BMG's breach of contractual, fiduciary, ethical or other duties, including without limitation the duty to inform.

11

### SEVENTH DEFENSE

The Complaint is barred, in whole or in part, by BMG's failure to conduct itself in a manner consistent with the standards of the industry.

### EIGHTH DEFENSE

The Complaint is barred, in whole or in part, by estoppel.

### NINTH DEFENSE

The Complaint is barred, in whole or in part, by laches.

### TENTH DEFENSE

The Complaint is barred, in whole or in part, by BMG's breach of the implied covenant of good faith and fair dealing.

### ELEVENTH DEFENSE

The Complaint is barred, in whole or in part, by a failure to plead with specificity any allegations sounding in fraud.

### TWELFTH DEFENSE

The Complaint is barred, in whole or in part, by the inequitable and/or illegal conduct of BMG.

### THIRTEENTH DEFENSE

The Complaint is barred, in whole or in part, by BMG's status as a fiduciary, the concomitant burden of proof on a fiduciary and/or the destruction of, and failure to produce, material evidence.

## FOURTEENTH DEFENSE

The Complaint is barred, in whole or in part, because BMG failed to prevail on the merits of at least one or more essential elements of the prior litigation and the fact, to the extent Plaintiff did prevail, such result was due, in whole or in part, to the intentional destruction and suppression of evidence.

## FIFTEENTH DEFENSE

The Complaint is barred, in whole or in part, by BMG's unclean hands.

## SIXTEENTH DEFENSE

The Complaint is barred, in whole or in part, by the wrongful acts of one or more non-attorney fiduciaries of C&M as to which BMG had knowledge or in which BMG participated or agreed to participate.

## SEVENTEENTH DEFENSE

The Complaint is barred, in whole or in part, by the Defendant's good faith.

## EIGHTEENTH DEFENSE

The Complaint is barred, in whole or in part, by the Defendant's reasonable belief and/or probable cause that one or more duties owing to it by BMG and others were violated.

13

### NINETEENTH DEFENSE

The Complaint is barred, in whole or in part, by the Utah Rules of Professional Conduct.

### TWENTIETH DEFENSE

The Complaint is barred, in whole or in part, by payment.

### TWENTY-FIRST DEFENSE

The Complaint is barred, in whole or in part, by the statute of frauds, which operates to preclude the proof of one or more asserted agreements.

### TWENTY-SECOND DEFENSE

The Complaint is barred, in whole or in part, by the existence of one or more integrated agreements as to which no evidence is admissible in order to contradict or vary the terms thereof.

### TWENTY-THIRD DEFENSE

The Complaint is barred, in whole or in part, by justification.

### TWENTY-FOURTH DEFENSE

The Complaint is barred, in whole or in part, by C&M's reasonable belief and/or probable cause that BMG had caused injury to it for which it should have had the right of recovery against BMG.

## TWENTY-FIFTH DEFENSE

The Complaint is barred, in whole or in part, by the judicial

proceedings privilege.

## TWENTY-SIXTH DEFENSE

The Complaint is barred, in whole or in part, by immunity and/or

qualified immunity.

## TWENTY-SEVENTH DEFENSE

The Complaint is barred, in whole or in part, by an absence of privity.

## TWENTY-EIGHTH DEFENSE

The Complaint is barred, in whole or in part, by the effect of the

bankruptcy court action.

## TWENTY-NINTH DEFENSE

The Complaint is barred, in whole or in part, by one or more forms of

preclusive effect.

## THIRTIETH DEFENSE

The Complaint is barred, in whole or in part, by improper venue or an

inconvenient forum.

## THIRTY-FIRST DEFENSE

To the extent the Complaint may be construed to state a claim for

punitive damages, a point which Defendant would contest, any award of

punitive damages based upon any standard of proof less than clear and convincing evidence would violate the due process clause of the Fourteenth Amendment to the United States Constitution, as well as Utah Code §78B-8-201.

### THIRTY -SECOND DEFENSE

Plaintiffs and its agents were negligent and any recovery had by Plaintiffs should be reduced by Plaintiffs percentage of negligence.

### THIRTY-THIRD DEFENSE

Plaintiff seeks to recover damages from legal proceedings and claims that have been vacated and are res judicata.

### THIRTY-FOURTH DEFENSE

The Complaint is barred, in whole or in part, by a lack of subject matter and personal jurisdiction.

### THIRTY-FIFTH DEFENSE

Plaintiffs' negligence and conduct together with or separate from other parties' negligence or conduct proximately contributed to the injuries to and/or the damages suffered by Plaintiffs as alleged in the Complaint, and the fault of said other parties or products must be compared with the fault, if any, Defendant.

### THIRTY-SIXTH DEFENSE

To the extent that the Complaint may be construed to state a claim for punitive damages, a point which Defendant would contest, any award of punitive damages would violate Defendant's due process rights, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, as any punitive damage award in this case would constitute a deprivation of property without due process of law.

### THIRTY-SEVENTH DEFENSE

To the extent that the Complaint may be construed to state a claim for punitive damages, a point which Defendant would contest, any award of punitive damages would violate the commerce clause of Article One of the United States Constitution, constituting an undue and unreasonable burden on interstate commerce, and to the extent it punishes acts or omissions which have occurred outside of state boundaries.

### THIRTY-EIGHTH DEFENSE

To the extent that the Complaint may be construed to state a claim for punitive damages, a point which Defendant would contest, any award of punitive damages would violate Defendant's rights under the contract clause of the United States Constitution, as it would impair the contractual

obligations of parties to this action. Additionally, the Complaint is subject to a contract right of Arbitration.

### THIRTY-NINTH DEFENSE

Plaintiffs Complaint and claims should be barred for failure to add indispensible parties.

### FORTIETH DEFENSE

To the extent that the Complaint may be construed to state a claim for punitive damages, a point which Defendant would contest, an award of punitive damages in this action would contravene federal constitutional prohibitions against *ex post facto* laws.

### FORTY-FIRST DEFENSE

To the extent that the Complaint may be construed to state a claim for punitive damages, a point which Defendant would contest, any award of punitive damages may violate the double jeopardy clause because Defendant could be subject to multiple awards of damages for the same set of acts.

### FORTY- SECOND DEFENSE

There is no evidence that Defendant acted with the conduct required by Utah Code §78-B-201, and any such conduct is expressly denied.

### FORTY-THIRD DEFENSE

The extent that the Complaint may be construed to state a claim for punitive damages, a point which Defendant would contest, any such claim may violate the Eighth Amendment's prohibition against the imposition of excessive fines.

### FORTY-FOURTH DEFENSE

Plaintiffs Complaint and claims are barred, in whole and/or in part by the Statute of Limitations because the acts alleged occurred from 1999 to 2003 and such acts known to Plaintiff and are time barred by the Utah Statute of Limitations Judicial Code Title 78B Chapter 2 Statute of Limitations, including without limitation, title 78B-2-305.

### FORTY-FIFTH DEFENSE

Defendant hereby expressly reserves the right to assert additional affirmative defenses in response to any additional claims which might be sought or asserted by Plaintiffs.

### FORTY-SIXTH DEFENSE

Defendant hereby gives notice to Plaintiffs as stated in its Answer that it lacks sufficient knowledge or information upon which to form a belief as to the truth of certain allegations contained in the Plaintiffs' Complaint or specific knowledge of actions on the part of Plaintiffs or other persons that

contributed to or caused Plaintiffs' damages. Until Defendant itself avails itself of its rights of discovery, it cannot be determined whether or not the above stated Affirmative Defenses will be asserted at trial. Defendant asserts these defenses in its Answer and Affirmative Defenses in order to preserve its right to assert affirmative defenses at trial and to give Plaintiffs notice of its intention to assert these defenses and avoid waiver of any defenses.

## FORTY- SEVENTH DEFENSE

The claims against Defendant set forth in the Complaint are barred in whole or in part, by Plaintiff's failure to take reasonable steps to guard against intentional destruction of evidence by its former client, Raymond Klein, and Defendant is entitled to all evidentiary presumptions in his favor arising out of such spoliation of evidence.

## FORTY-EIGHTH DEFENSE

The claims against the Defendant set forth in the complaint are bared in whole or in part, by Defendant's reasonable reliance upon the advice of counsel for any acts or omissions undertaken in connection with the Malpractice Action.

## FORTY-NINTH DEFENSE

The Defendant does not waive and hereby expressly reserves the right to add any and all additional defenses as may appear to be, or become, applicable, during the course of this litigation.

### Jury Trial

Defendant demands a jury trial for all matters, including the Counterclaims and Third Party Claims that may be tried before a jury.

**WHEREFORE,** The Defendant demands judgment in their favor and against BMG relation to its Complaint, as follows:

A.    For judgment of no cause of action against BMG and for dismissal of the Complaint with prejudice and upon the merits;

B.    For all of the  Defendant's reasonable attorneys' fees, costs and expenses as may be allowed at law, in equity, by contract, statute, rule, inherent power of the Court or otherwise;

C.    For all such other and further relief of any and every kind or nature as is just, equitable and proper according to the proof.

D.     For any and all forms of equitable relief against BMG, on any defense, or in the event that any defense is pleaded that is properly treated as a counterclaim by the Court or in the event that the proof offered by any party would justify such equitable relief;

## COUNTERCLAIM AND THIRD PARTY COMPLAINT

Without prejudice and waiver of the right to arbitration and as required by the Federal Rules of Civil Procedure and the current case management order Defendant/Counterclaimant/Third Party Plaintiff ("Defendant") hereby counterclaims against Burbidge Mitchell & Gross, a general partnership and does 1-10 ("Counterclaim Defendant" "BM") and Third Party complains against Raymond O. Klein ("Klein"), Richard D. Burbidge ("Burbidge") and Jefferson W. Gross ("Gross") and does 1-10 (collectively and individually referred to as "Third Party Defendants") the Counterclaim Defendant and Third Party Defendants collectively and individually referred to as "BM/Klein Defendants", to the extent that Defendant Peters is not dismissed with prejudice from all claims, and such decision(s) are not pending appeal and forever binding, from the original action through pre-trial motion or adjudication, Peters alleges upon information and belief for his causes of action as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Burbidge Mitchell & Gross, is a general partnership doing business in Salt Lake City, Utah ("Counterclaim Defendant and party to "BM Defendants" and "BM/Klein Defendants")

2.      Raymond O. Klein is domiciled in Park City, Utah. (party to "BM/Klein Defendants" "Third Party Defendant" and individual)

3.      Richard D. Burbidge is domiciled in Salt Lake County, Utah. (party to "BM/Klein Defendants" "BM Defendants" "Third Party Defendant" and individual)

4.      Jefferson W. Gross is domiciled in Salt Lake County, Utah. (party to "BM/Klein Defendants" "BM Defendants" "Third Party Defendant" and individual)

5.      Paul Peters ("Plaintiff") is domiciled in Maui County, Hawaii.

6.      The true names or capacities, whether affiliates, individual, partners, corporate, associate or otherwise, of the defendants named herein as Does 1 through 10 are unknown to Defendant, who therefore sues said Counterclaim Defendant and Third Party Defendants by such fictitious names, and Defendant will amend this complaint to show their true names and capacities when the same have been ascertained.

7.      This Court is granted diversity jurisdiction over this matter because the amount in controversy exceeds the sum or value of $75,000 and diversity of citizenship exists between Defendant and Counterclaim Defendant and Third Party Defendants.

8.     The claims asserted in this Counterclaim and Third Party Complaint arise under other United States and state laws, and are based upon, and arise out of, the same transactions and occurrences as the original claims asserted by Plaintiff's Complaint over which this Court has original and supplemental jurisdiction.  The state law claims are so related to the claims in this action over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution, thereby providing to this Court expressly as supplemental jurisdiction pursuant to 28 U.S.C. ' 1367(a) and 1391(b).

9.     Venue is proper in this judicial district pursuant to U.S.C. Section 1391(b).

## GENERAL ALLEGATIONS

10.    In November 1996, Amir Keyvani sued Raymond Klein ("Klein") in Summit County, Utah concerning a development located on Kilby Road.

11.    The Keyvani's were seeking damages resulting from claims that Klein committed fraud ("embezzlement" to appropriate fraudulently to one's own use, as money or property entrusted to one's care) breached fiduciary duties and other claims of wrongdoing by Klein.

12.    Klein, retained BM and its partner attorneys, including Third Party Defendant Burbidge to represent Klein in the matter.

13.    Burbidge did not terminate the representation of Klein at any time prior to May 17, 2004 when the matter was resolved by the filing with the Summit County Third District Court a Release of Lis Pendes.

14.    This is further established through the absence of any written termination of the Keyvani representation and the billing records of BM indicating that legal advice and counsel continued regarding the Keyvani into 1999.

15.    BM, Burbidge and Stephen Mitchell also represented Klein in a related matter involving Klein's financial wrongdoings in a matter involving other real estate owned by members of the Keyvani family near the Deer Valley Ski Resort in Summit County, Utah ( the Kilby Road and Deer Valley Property  now "Keyvani Property").

16.    In the complaint authored by BM partner attorneys Burbidge and Mitchell, BM claimed that Klein was entitled to 40% of the profits, not less than $10,000 per lot from the Keyvani Property as the result of an unwritten "joint venture agreement."

17.    The complaint alleged the Klein was also defrauded as the result of oral representations of Mr. Keyvani that were either fraudulent or negligently made to Klein.

18.     Further, BM alleged that Klein was entitled to an "equitable lien" against the Keyvani Property despite the lack of any written agreement related to such property. Burbidge executed and recorded a Lis Pendens against the Keyani Property based on the allegations of an oral "joint venture agreement."

19.     The Lis Pendens was stored electronically in the BM computer network in the directory js klein.sum\pendens.

20.     The Burbidge complaint was stored electronically in the BM computer network in the directory js klein.sum\com.

21.     The Keyvani Family members sued Klein as the owners of the Keyvani Deer Valley Property citing the financial wrongdoing on the part of Klein.

22.     Particularly, that Klein paid to himself the Keyvani's funds that were intended as a down payment and claimed an accounting; that Klein was posing as a real estate agent without a license as required under Utah law; that Klein was interfering with the sale of the Keyvani Property; that Klein told the Keyvani's valid real estate agents that the real estate agent would not be able to sell and of the Keyvani Deer Valley Property lots by the time Klein was done with the Keyvani's, Klein made statements to the Keyvani's architect that Klein was going to pull every dirty punch he can and make the

Keyvani's tear down all the buildings on the Keyvani Property and give Klein back the land.

23.     As part of the Klein and BM litigation tactics they recorded of a Les Pendens against the Keyvani's property knowing that doing so would interfere with the Keyvani's ability to develop and sell their property. Because Keyvani could not deliver marketable title under a cloud of lawsuits.

24.     The Keyvani's demanded an accounting for the monies that the Keyvani paid to Klein that Klein was claiming as reimbursements put the property in his name. Klein through BM claimed that such amounts that were not stolen but were "loans."

25.     In connection with the claims asserted by Burbidge and Stephen Mitchell, Klein was able to receive monies based on the sale of the properties by a settlement agreement.

26.     The settlement agreement was memorialized in part by a lien recorded against the Keyvani Property.

27.     Klein and Burbidge executed a settlement agreement which provided for payments to Klein through September 17, 1999 for the Deer Valley property and ongoing obligations upon the parties for the Kilby Property that where not concluded until 2003.

28.     The BM/Klein Defendants concealed evidence of these prior Keyvani representations, allegations, facts and documents from C&M, its Managers and Members even though such documents were readily accessible to the BM/Klein Defendants.

29.     The BM/Klein concealed evidence establishing facts know themselves concerning the Keyvani embezzlement, fraud and interference from C&M, its Managers and Members.

30.     The BM Defendants and Klein concealed evidence establishing the ongoing representation and terms of the settlement agreement and the activity concerning the Keyvani Lis Pendes from C&M, its Managers and Members.

31.     The evidence concealed by BM/Klein Defendants contained material information and was concealed because it would have lead (even if the Keyvani allegations were untrue) to the removal, or resulted in greater and focused oversight of Klein as a manager having control of C&M funds; and would have lead to removal of BM as the company's counsel.

32.     The evidence concealed by BM/Klein Defendants contained material information and was concealed because it would have warned others concerning Klein's and BM's conduct and mutual loyalties and those could

have acted accordingly to prevent collusion of the false appearance of unbiased legal advice and action by Klein in response thereto.

33.    The evidence that was concealed by the BM/Klein Defendants was material information that was purposely withheld from High Mountain Partners and its counsel, Parr Brown and Gee when it purchased securities in C&M and further to facilitate the usurpation of the C&M Weight Parcel Opportunity.

34.    Since the sale of the membership interest is considered a sale of a security federal law was violated when soliciting and selling without a registration statement or similar disclosure and concealing evidence from the purchaser and its counsel that should have been disclosed to the purchasers of the C&M securities.

35.    Had the managers and members of C&M known of this activity both BM and Klein would have been removed from positions of authority and advisors to the company and disassociated from C&M.

36.    Further, evidencing BM and Klein's concealment of evidence establishing the Keyvani relationship and Klein wrongdoings are Gross's statements by letter on July 7, 1999 claiming to represent C&M and not disclosing that BM had not terminated its ongoing representations of Klein in the Sacks v. Klein and Keyvani Matters.

37.    Klein, nor Burbidge terminated their attorney client relationship in relation to this agreement because later on January 19, 1999 Klein met with Burbidge for 2.5 hours on the Amir Keyvani et al matter.

38.    Klein paid for this bill out a personal check number beginning 25(illegible) Six days later on January 25, 1999.

39.    Concurrently, Burbidge billed 3.25 hours to Klein for reviewing documents and correspondence for the matter described as "C&M Partnerships".

40.    Klein paid for this bill with a personal check number beginning 1 (illegible).

41.    BM its attorneys, including without limitation, Burbidge, Gross, Mitchell, Boren were aware of the Klein's alleged conduct and knew that such information was important to the Mangers and Members of C&M for purposes in 1999 and for purposes in the Malpractice Action and will be important for purposes of this action.

42.    Since 1999, to present the Third Party Defendants fraudulently and willfully withheld, suppressed, destroyed and spoliated such evidence thereby violating the duty of care, duty of loyalty, duty of confidentiality owned to the company, its managers and members and for the attorney actors violated the Utah Rules of Professional Conduct.

43.    The spoliation of this evidence was further exacerbated by the

statements before the Utah Third District Court when BM represented to the

Court that,  "A couple things that I have to correct that Mr. Moore said, they

said Mr. Klein was an existing client that is not correct, your honor has

already mentioned the Keyvani litigation and the testimony of that was that

it was over done finished and totally unrelated.  That that was over done

finished"

44.    Upon this representation and others concerning evidence concealed by

the BM/Klein defendants BM was able to procure a ruling based on the

incorrect understanding that Klein was not an existing client when C&M

retained BM.

45.    BM and its attorney partners violated its duty to C&M its managers

and members other parties in litigation or arbitration (including Defendant)

and the Court to disclose and, even warn, others concerning the evidence,

facts, circumstances and allegations concerning the  Klein'conduct in the

Keyvani matter.

46.    Additionally, BM and its attorney partners owe Klein an ongoing duty

to loyalty which requires BM to hold the interests of Klein above all others

and further prevents BM and its attorney partners to not disclose or even

warn others concerning facts, circumstances and allegations concerning the allegations of Klein's improper conduct alleged in the Keyvani matter.

47.     BM breached its duties to C&M and its managers and members when it keeps its duties of loyalty and confidentiality to Klein.

48.     BM misrepresented to the Utah Third District Court that Klein's interest were "wholly aligned" knowing that BM/Klein were concealing and/or had destroyed evidence indicating otherwise as described below.

49.     BM represented to Judge Maugham of the Utah Third District Court at a Motion for Summary Judgment hearing  to the effect, "And as you honor observed on the matter between Klein and Sacks involving the Weight Parcel Klein's interests were wholly aligned with C&M, and at the end of the day Mr. Klein didn't get anything out of that C&M got the option on the Weight Parcel so that, that whole conflict issue is just simply a non starter there is no evidence before the Court that would raise a material a genuine issue of fact as to the existence of the conflict."

50.     This is not true because in 1998, the BM/Klein Defendants associated for the purpose of concluding a transaction to purchase a large tract of land the east border of the C&M property owned by the Weight Family ("Weight Parcel").

51.     The purpose of the transaction was to usurp and divert a company opportunity away from C&M for the benefit of C&M Managers/Members Robert Sacks and Klein.

52.     Sacks and Klein's conduct was in breach of the C&M Operating Agreement which expressly prohibits the diversion of the Weight Opportunity in section 13. which provides, "Conflict of Interest.  No member shall, directly or indirectly, (a) advance or delay the business of the Company in order to benefit or favor any other person or company, or (b) divert any prospective customer or opportunity of the Company.

53.     During the course of secret negotiations with the Weights and its representatives a dispute arouse between Klein and Sacks over who would benefit most from the stolen company opportunity.

54.     Klein then deployed his attorney Burbidge to promote Klein's individual interest in this "dispute among thieves" over the Weight Parcel Opportunity.

55.     Klein created a list for Burbidge containing descriptions of important communications between Sacks, Weight and/or Klein and events that evidence the usurpation of Weight Parcel Opportunity.

56.     Soon thereafter in early 1999, BM informs Sacks by letter that Burbidge has been retained to protect the interests of his client Klein.

57.    Burbidge was familiar with the C&M Operating Agreement, including the section 13. Conflict of Interest provision.

58.    This letter and other evidence concerning the nature of the representation and facts involving BM and Klein's involvement in the usurpation of the Weight Parcel Opportunity was concealed from C&M's other Members and Managers and Defendant.

59.    On February 21, 1999, by letter from Gary Nielsen to Burbidge, Burbidge is told in great detail the means and method by which Klein and Sacks were diverting the company opportunity of C&M to purchase the entire Weight Parcel.

60.    On February 22, 1999, Klein wrote to Burbidge confirming the means and method by which Klein and Sacks were diverting the C&M company opportunity.

61.    On February 23, 1999, Joe Tesch under the subject line Sacks v. Klein writes Burbidge and asks that his client Klein review a Gary Nielsen letter to Burbidge dated February 21, 1999, but more importantly reiterates a demand for the accounting records unless Burbidge can settle the matter.

62.    This demand was never communicated to C&M, Defendant or any other parties by the BM/Klein Defendants that this demand evidenced Sacks belief that Klein was acting improperly with C&M funds.

63.    Sacks was particularly situated to make this assessment of Klein's use of company funds as an member of C&M and a cooperating partner in the usurpation of the Weight Opportunity.

64.     Evidence of these demands were concealed and later destroyed in furtherance of the BM/Klein Defendants ongoing scheme to conceal evidence of these acts and allegations from others that had an important need for such information.

65.    Burbidge never disclosed to C&M, its Managers and Members that Klein and Sacks usurped the C&M company opportunity to purchase the entire Weight Parcel and violated the section 13. provision of the C&M Operating Agreement on Conflicts of Interest; Sacks made clear that if his demands for settlement were not met that Sacks would request an accounting for a full set of the financial records of C&M that were under the sole control of Klein.  This demand that a condition of settlement was to release or suppress Sacks' demand evidences that that the interests of Klein were not aligned with C&M because Klein had violated his fiduciary duties through his attempts to steal the company opportunity and to suppress demands for Klein's financial records of C&M.

66.    On February 22, 1999, Klein sent via fax to Burbidge a copy of a "Representation Agreement" dated February 17, 1998 between representatives of the Weight Parcel, Klein and Sacks.

67.    The agreement is executed by Klein and Sacks for their individual benefit and constitutes a usurpation of the C&M company opportunity concerning the Weight Parcel.

68.    Further, Burbidge was aware of the "Representation Agreement" because it is described as item 44. in a listing of documents and events concerning the Klein Sacks usurpation in a listing file named "Burbidge-Sacks$Weight".

69.    Then on February 24, 1999 Burbidge writes to Sacks Counsel, Joe Tesch, in a letter captioned Klein v. Sacks (C&M Properties, L.L.C.) and admits that he is concurrently representing Klein and C&M when he writes, "Subsequent to the receipt of your letter dated February 23, 1999, our respective clients, Messrs. Klein and Sacks, have spoken and I have been asked by Mr. Klein to respond to your proposal that apparently they have agreed to be satisfactory."

70.    This letter and related information was concealed by Burbidge from the other Managers and Members of C&M and Defendant and only disclosed to Klein through carbon copy.

36

71.    Also, on February 24, 1999 Burbidge writes to Klein in a letter captioned Klein – Sacks containing no reference to C&M Properties, L.L.C. as was listed in the letter to Sack's counsel, Tesch.

72.    The letter requests that Klein speak with Burbidge regarding a fax received by Tesch.  Burbidge only speaks with Klein and no other Members or Managers of C&M are alerted to the Tesch fax indicating that Burbidge only consulted with his client Klein and no other Manager or Member of C&M.

73.    The Burbidge letter evidences that Klein and Sacks reached agreement on how to divide the Weight Parcel and settle Sacks' claims for an accounting and claims against Klein.

74.    Nielsen then withdraws as C&M's lawyers and requests a waiver of conflict because of the conflict between representing Sacks so that he can now represent Sacks.

75.    Burbidge does not pursue nor receive a corresponding waiver of conflict for his representation of Klein in the Klein v. Sacks matter evidencing the BM/Defendants scheme to conceal their true relationship, confidences and loyalty.

76.    The BM/Klein Defendants do not warn C&M and its Members and Managers of Burbidge's the knowledge of Klein's misappropriation of assets and the evidence in BM's possession so indicating.

77.    Instead, the BM/Klein Defendants continue to conceal and destroy such evidence.

78.    On February 24, 1999, Burbidge writes, "subsequent to your letter our respective clients Mssrs. Klein and Sacks proposed a settlement." The settlement  makes no reference to the prior demand to review the financial records in Klein's control indicating the agreement to withdraw demands for accounting for the consideration of the settlement.

79.    Burbidge was on notice that similar to Keyvani the records in Klein possession evidenced the wrongdoing of Klein and misappropriation of the company's assets.

80.    Burbidge knew that an agreement of the Members of C&M required two Managers' approval for large expenditures and that Klein appropriating funds without authority written approval of another manager.

81.    But Burbidge did not disclose to C&M or any other later members or subsequent purchasers of securities that he had knowledge and possession of evidence establishing these facts because if he did, if would be revealed that BM's loyalty was to Klein.

82.     Then, BM could not collect fees from C&M because it was Klein that kept BM in its position and the BM/Defendants know C&M would not waive the conflict.

83.     On March 5, 1999 Klein issues personal checks to Burbidge totaling $60,000 drawn off his personal account shared with Mary Hadsall.

84.     On check numbered 2589, $50,000 was paid to Burbidge for his ongoing representation of Klein's individual interests concerning "Sacks & C&M".  This representation was to defend Klein personally and prosecute the Klein v. Sacks claims.

85.     On check numbered 2590 $10,000 was paid to Burbidge for his ongoing representation of Klein's individual interests concerning the "Weight & C&M" and the claims that C&M and its managers and members have against Klein regarding the Weight Parcel and the attempt to settle such claims in a manner that concealed claims are not disclosed to C&M, its managers and members.

86.     On March 10, 1999, Burbidge writes to Klein under the caption "**Klein - -  Sacks**" concerning a waiver conflict of interest asking if Klein sees a downside to Gary Nielsen assisting Sacks. This letter evidences the BM/Klein Defendants'  understanding of the conflicts and duties that they themselves were violating.

87.   Then on March 11, 1999 Burbidge writes to Miles Lignell regarding a copy of a Real Estate Option Agreement the file of the letter was electronically stored on the BM computer network at 8\c:\s\clients\C&M\ML.L1.

88.   The Real Estate Option Agreement was electronically stored on the BM computer network at c\s\clients\C&M\Sacks\Option.Agr,

89.   The Escrow Agreement was electronically stored on the BM computer network at c\s\clients\C&M\Sacks\IrrEscInt, the Notice of Option Agreement was electronically stored at c\s\clients\C&M\Sacks\Not.Option, the Warranty Deed c\s\clients\C&M\Sacks\WarDeed.H&R and c\s\clients\C&M\Sacks\WarDeed.Ruth  The background facts and circumstances evidence by these documents were concealed to the other Manager and member of C&M so as not to reveal that the Weight Option Agreement did not include the entire Weight Opportunity; ultimately C&M's Weight Opportunity is divided between Klein and Sacks.

90.   On March 16, 1999, Burbidge writes to Klein under the caption "**Klein - - Sacks**" concerning a Consent Agreement of the Members of C&M Properties, L.L.C. and Mutual General Release asking only for Klein's comments.

91.     Burbidge does not write to any of the members or managers of C&M concerning the consent and release, nor does Burbidge disclose the claims C&M and its managers and members have against Klein and Sacks for usurpation of the company opportunity to purchase the entire Weight Parcel and the allegations of financial wrongdoing on the part of Klein.

92.     Then Burbidge drafts clients\C&M\Sacks\GenRelease contains no disclosure that Burbidge is representing Klein and that he knows of the Keyvani and Sacks v. Klein claims of financial wrongdoing.

93.     Burbidge then writes Klein on March 16, 1999, under the subject line Klein – Sacks soliciting comments from Klein (no circulation to Wolf Mountain)

94.     On March 18, 1999, Joe Tesch letter subject lien Ray Klein, Kenny Greiswald, et al. v.Robert and Larry Sacks, et al. the letter indicates that Burbidge is representing Griswold by saying your clients.  Burbidge does not correct Tesch but instead continues pretends to act as a representative of Griswold.

95.     Burbidge then sends a letter that then in section 6.4 he begins to represent C&M by stating our client has no problem providing a resolution of its members upon the execution of the option agreement.  Falsely representing that Burbidge represents C&M rather than Klein's interests in

41

C&M and evidencing the Third Party Defendants' plan to force upon C&M a transaction that is Klein's interest and not the company's interest. This document was concealed as an electronically stored file in the BM computer network at 8\c:\s\clients\C&M\ML.L2 but the letter was only copied to Ray Klein and not the other managers or members of C&M. Despite saying we, Burbidge only gave Klein the opportunity to make any comments on the content of the letter.

96.     Then Burbidge (or Gross) on March 25, 1999 drafts a Second Amendment to Operating Agreement of C&M Properties, L.L.C. and does not disclose his representation to all of the other members. The draft of the Second Amendment to Operating Agreement was stored on the BM computer network at s\c\clients\C&M\Sacks\2Amend.OpAgrmt

97.     Then BM drafts on March 30, 1999 on behalf of its client Klein a Consulting Agreement to pay Klein $100,000 per year. This document was stored electronically on the BM computer network at c\s\clients\C&M\Sacks\Exhibit.A Burbidge does not disclose in the agreement its ongoing representation of Klein's personal interest in C&M nor the Keyvani matter.

98.     Then on March 30, 1999 Gross appears on the scene having the effect of distancing Burbidge from any questions regarding his ongoing

representation of Klein regarding his interests in C&M and Keyvani. BM

asserts itself as counsel to C&M conceals the Keyvani and Sack and Klein

usurpation of corporate opportunities, Klein was acting as a real estate agent

without a license or BM ongoing representation of Klein's personal interests.

99.    Then Burbidge in the course of representing Klein's interests assists

Klein in the drafting, notice of and conduct in of a meeting called for the

benefit of Klein and the Raymond O. Klein Trust.

100.   The BM Defendants draft a secret outline that coaches Klein through

the process of imposing upon the company the "Klein Resolutions" upon the

company and all of its members.

101.   The BM Defendants with full knowledge that Klein's interests are

adverse to that of the company on the issue of the Weight Parcel and the

allegations of financial wrongdoing prepare and instruct Klein to circumvent

any inquiry for a resolution not noticed by Klein, such as the issue of

financial wrongdoing or accounting.

102.   The Burbidge Defendants, despite the language and intent of the Klein

notice which states that the purpose of the meeting is "to consider and act

upon the following Resolutions, along with any other matters or Resolutions

that may properly come before the meeting" advised Klein how to avoid any

inquiry by the instruction "If someone raises a matter not on the Notice of

Special Meeting, the company should generally decline to consider the matter. However, if a member is persistent on presenting a matter to the members, I recommend having a preliminary vote by the members on whether they will consider such matter at the Special Meeting" thereby interfering with C&M's ability to fairly operate.

103. This document was concealed from C&M and its other managers.

104. This document was stored on BM's computer system at s\clients\C&M\Sacks\Outline.SpecMtg:

105. This secret advice enabled Klein to act in furtherance of Klein's best interests and not that of C&M. On the advice and counsel of Burbidge regarding the Klein resolutions the Third Party Defendants did not disclose that BM was directing Klein's actions as to avoid questions asking concerning the Klein usurpation of the Weight Opportunity and financial wrongdoing.

106. This evidence contradicts the representations made in this Court and the Utah Districts that BM began representing C&M in April 1999. This evidence was systematically concealed, suppressed and destroyed by the Third Party Defendants.

107. At the April 14, 1999 Meeting of Members C&M member Wolf Mountain objects to Mutual Releases because may waive unknown claims.

Ultimately, claims that the company had against BM/Klein Defendants were concealed from the members of the company at that meeting.  Immediately, the BM/Klein Defendants finalized the division of the Weight Option between Sacks and as a result Klein escapes the scrutiny of the financial records that would have lead to his dismissal as a Manager.

108.   On April 23, 1999 Burbidge sent a letter to C&M Member Wolf Mountain rejecting its prior written request for the financial and expense information in the possession of Klein.  Burbidge acting in the best interests of Klein asserts that Wolf Mountain is not due the documents for review at the meeting.

109.   On August 25, 1999 High Mountain Partners became a member of C&M through the purchase of interests facilitated by Klein and BM.  BM drafted the Purchase Agreement and related documents.

110.   On June 21, 2000 Klein sent a letter drafted by BM attorneys to Wolf Mountain under the pretext of a loan application to claim surprise to transfers made by Wolf Mountain of its membership interests for the planning purposes of it individual members.  BM and Klein falsely asserted that Mr. Griswold not longer had the right to participate in the company and that respective membership interests had no rights in the company. The

Third Party Defendants knowingly concocted a false legal opinion that the transfer extinguished Wolf Mountain's interest.

111. About this time BM gave an opinion that the 1996 Easement that ran through the middle of the C&M property was subject to estoppel and not enforceable. When Klein Gross and Burbidge later realized that the 1996 easement was enforceable and that the company did not have the money or ability to raise money to pay for water and the infrastructure and required to develop the C&M project and that Klein's had grossly mismanaged the company. The Third Party Defendants began to destroy C&M assets so as to fabricate legal claims against others in order to shift the focus of the companys from Klein's mis-management. This benefited Klein because of the capital structure of the company Klein would only received a nominal return, ending the company would result in a dissolution and discovery of Klein, Burbidge and Mitchells concealment of the embezzlement, Klein would stay in control of the company and Burbidge and Mitchell would collect hundreds of thousands of dollars of fees as the companies assets were destroyed, while fabricating and litigating imprudent claims, and the other members would not have discovered that the company was improperly advised that the 1996 easement was not enforceable and that Wolf Mountain's membership interests accreted.

112.   During such period Klein, Burbidge and Gross concocted and implemented a scheme to the freeze out Wolf Mountain and then to seek approvals to commence litigation that they new would not benefit the company and injure the assets of the company so as to increase the claims for damages and increase legal fees to be paid to Burbidge and Gross.

113.   In order to build the case, the BM/Klein Defendants damaged the company so as to increase the damages, create false claims and litigate.

114.   However, BM/Klein parties need to conceal the prior representation so that together Klein's past and ongoing embezzlement would remain undetected. BM would receive massive legal fees.

115.   Wolf Mountain was locked or "frozen" out of the company until late Summer of 2001.  When under mounting legal pressure the BM/Klein Defendants capitulated and acknowledged Wolf Mountain or its assignees interest.

116.   The BM/Klein Defendants did not disclose to any other C&M managers and members that they where implementing the scheme to fabricate damages claims.

117.   As part of its plan to destroy C&M's value Klein Burbidge and Gross caused the company to fabricate and make false claims against ASC, Mike Baker, Kenneth Griswold, Paul Peters, CEHOA, Steve Williams and to lock

47

out Wolf Mountain so Klein could remain in control of the company. Klein, Burbidge and Gross planned to use the governmental approval process knowing that it did not have the funds or rights develop the project and meet the requirements of the Summit County. Klein, Burbidge and Gross did not tell Wolf Mountain, High Mountain or John Shirley of the Plan. But only sought an uniformed "unanimous" consent from Shirley and High Mountain.

118. The Third Party Defendants filed a complaint against surrounding land owners and its C&M's own members claiming $52 million in damages.

119. However, the diligence of Wolf Mountain's counsel forced the recognition of its interest. This was not an immediate threat to Klein and Burbidge' because Gross was misinforming Olson as to development progress and the legal issues facing the company.

120. Then in late Summer of 2001, BM claiming non-payment as the basis withdrew as C&M's attorneys.

121. Thereafter, the BM/Klein Defendants did not transfer the C&M operating and legal files to its new attorneys so that the company could participate in pending and probable legal proceedings with American Skiing Company, Wolf Mountain, CEHOA and others and impending Bankruptcy Proceedings

122.   The BM/Klein Defendants excluded C&M from obtaining evidence related to those actions instead concealed evidence, destroyed files, records and deleted computer files and containing material evidence of the Weight Parcel Opportunity, Klein v. Sacks dispute, Keyani Fraud, embezzlement and the BM representations related thereto.

123.   During this period the BM/Klein Defendants concealed their conduct from discovery by asserting that Klein was protecting his personal documents and that the C&M computer was infected with a virus so that the computer needed to be reformatted thereby destroying all the incriminating evidence.

124.   The above described acts evidence and the ongoing concealment of evidence by the BM/Klein Defendants from C&M and its managers and Defendant dating as far back as the Keyvani matter and Klein v. Sacks matter.  Such spoliation of evidence accelerated after Burbidge and Mitchell withdrew as counsel to C&M as Klein was being removed as Manager in 2001.

125.   During the fall of 2001 despite the withdrawal of BM as C&M attorneys, Klein and BM continue to associate with each other and communicate.

126.   During such time the BM/Klein Defendants secretly met at the offices of Burbidge and Mitchell in furtherance of the ongoing concealment and destruction of incriminating documentary and electronic evidence supporting claims concerning Klein's embezzlement from C&M, usurpation of the Weight Parcel Opportunity, Klein's securities law violations, Klein's plan to destroy the assets of C&M in order to create legal claims and Burbidge and Mitchell's professional misconduct in assisting and concealing such actions.

127.   During those meetings evidence concerning these issues was concealed or destroyed.  During late 2001 and early 2002 with BM 's full knowledge and assistance Klein removed documents from BM files without any independent confirmation of what was being taken was not further concealed or destroyed, including the company computer known to the BM/Klein Defendants.

128.   Evidence of the spoliation and concealment of evidence was concealed from Plaintiff, C&M and its principals and discovered as a result of the inquiries made in response to this litigation.  For example the C&M computer that was the sole repository of C&M information that was formerly under the possession and/or control of the BM/Klein Defendants was found to have had its computer files containing important communications, agreements and accounting/financial records destroyed.

129. Some of those records have been recently recovered through new forensic techniques. In response to this discovery, Todd Wakefield recently sent a letter asking the BM Defendants to explain the destroyed files and circumstances.

130. These continuing acts of spoliation of the BM/Klein Defendants toll any applicable statute of limitations because the Counterclaim Defendant and Third Party Defendants made assurances that were relied upon that all documents where returned to the C&M, when in fact the suppression and destruction of knowledge and evidence was ongoing and known to the BM/Klein Defendants and unknown to others.

131. To date BM Defendants and Klein have offered no defense or denial of their knowledge, involvement and/or participation in the suppression and destruction of C&M's computer records.

132. During the Utah and Federal legal actions and the arbitration BM/Klein Defendants prohibited C&M and its members, manager and lawyers and other parties litigating in relation to Klein and BM to obtain or review such documents prior to the spoliation at the hands of the BM/Klein Defendants.

133. During such time C&M through its managers appeared at the BM offices with individuals to get possession of the evidence in controlled by

BM and return it to C&M and its new lawyers, BM refused to permit such return of documents or to conduct inspection or inventory of the documents.

134.   When the BM Defendants returned the C&M files in fourteen boxes, one box was missing as well as the documents that BM had in its files regarding drafts, emails, litigation files, research and documents transmitted to BM and work performed BM on behalf of C&M.

135.   One fifteenth of the C&M documents were suppressed, lost or destroyed while in the hands of the BM Defendants.

136.   As a result of the spoliation of evidence, C&M and other parties were material interfered with their ability to assert remuneration for damages and injury against the BM/Klein Defendants.  Settlements and economic transactions occurred in a vacuum of knowledge and evidence showing the fault and liability of the BM/Klein Defendants.

137.   Because of the spoliation BM further was able to mislead the Court to believe that no evidence of their wrongdoing existed in an action brought by C&M against its former lawyers BM.

138.   This assertion of no evidence was made by BM knowing that the BM/Defendants at the time had concealed and destroyed evidence important for C&M to prove concurrent representation, usurpation of the Weight

Opportunity, the freeze out of a member of C&M, the conflicting interests of

Klein with regard to the Weight Opportunity and the Keyvani matter.

139. This deception on the Court is continually furthered as BM has

instituted legal proceedings against those parties from whom the BM/Klein

Defendants have been concealing and destroying documents and

concurrently asserts privilege and res judicata regarding the Court's prior

actions based on incomplete and withheld evidence.

140. The purpose and ulterior motives of BM and Klein and its counsel in

continuing to deceive the Court and instigate legal proceedings against the

Plaintiff and other Defendants to the BM Complaint include, without

limitation, retaliation, revenge, intimidation of the Plaintiff and to promote a

reputation to others that if one raises any question as to BM's conduct that a

abusive law suit will be levied against you; retaliation against C&M and its

prinicpal for not following the BM/Klein Defendants plan to liquidate and

devalue the assets of C&M in order to create claims for litigation purposes in

which BM had and an ongoing and continuing financial interest and

expectation of hundreds of thousands of dollars of legal fees; also, through

the same threats and intimidation to interfere with the complaint and

disciplinary process of the Utah State Bar and the overseeing Courts of the

State of Utah related to past or existing complaints that C&M has against

BM; to invade the private affairs and assets of Plaintiff and the other

Defendants; to show by example to the Utah legal and business community

that if you confront the BM/Klein Defendants about their practices that you

will expend great resources defending against baseless retaliatory claims

thereby bolstering there own reputations to be feared as bullies; to facilitate

the plan to acquire any remaining C&M property rights that were to be

acquired through the lock out or through extensive litigation and a resulting

interest in the property thereafter; to intimidate, harass and dilute the ability

of Plaintiff to further investigate the acts, assist and cooperate with State and

Federal investigations or other claimants of Terry Diehl and Mark Robbins

and their counsel relating to improper real estate and stock transactions and

collection of outstanding judgments.

## FIRST CLAIM FOR RELIEF

### CONCEALMENT OF EVIDENCE

141.   By this reference, Defendant incorporates all paragraphs of this

Answer, Counterclaim and Third Party Complaint as if set forth in full

herein.

142.   BMG/Klein Defendants had an obligation and duty to disclose

evidence in relation to probable and existing litigation, arbitration and

bankruptcy proceedings concerning the Defendant, CEHOA, C&M, Klein and BMG.

143.   The evidence that the BMG/Klein intentional failed to disclose was relevant and/or material to probable and existing litigation and bankruptcy proceedings known to the BMG/Klein Defendants.

144.   The destruction and concealment of documents relevant to proof of an issue in pending or probable legal proceedings gives rise to an inference that production of the document would have been unfavorable to the BM/Klein Defendants.

145.   The evidence was of such nature and limitation that no parties other than the BMG/Klein could have known or learned of the evidence without the BMG/Klein Defendants disclosing such information.

146.   Plaintiff, CEHOA, C&M and other parties were harmed by relying on the non-disclosure of the evidence to probable and existing litigation and bankruptcy proceedings concerning C&M, Klein and BMG.

147.   The BMG/Klein Defendants further fraudulently concealed evidence as alleged herein and through the making of the claims and causes of action in this matter with the knowledge that evidence refuting such claims has been destroyed, concealed and/or suppressed by the BMG/Klein Defendants.

148.   Defendant has been, and is being, damaged by the BMG/Klein's acts

to be proven at trial, including without limitation the loss of attorneys fees

and costs, emotional distress, employment opportunity or work and physical

injury.

## SECOND CLAIM FOR RELIEF

### SPOLIATION
### SUPPRESSION AND DESTRUCTION OF EVIDENCE

149.   By this reference, Defendant incorporates all paragraphs of this

Answer, Counterclaim and Third Party Complaint as if set forth in full

herein.

150.   BMG/Klein Defendants had knowledge of the probable, foreseeable

and/or existing litigation, arbitration and bankruptcy proceedings concerning

Plaintiff, CEHOA, C&M, Klein and/and BMG.

151.   BMG/Klein Defendants willfully destroyed, concealed and suppressed

evidence in their possession important to such litigation with the design to

disrupt and interfere such litigation and proceedings for their individual,

mutual benefit and benefit of other parties with the aim to avoid liability for

their, or others, conduct and to interfere with the settlement process and

prospective economic advantage to accrue to C&M in its operation of its

business, Defendant and other parties to litigation involving Plaintiff and the

BMG/Klein Defendants.

152.   The destruction, concealment and suppression of such evidence disrupted the litigation, bankruptcy proceedings increase costs and prospective economic advantage of C&M and Plaintiff and Plaintiff has incurred damages alleged herein.

## THIRD CLAIM FOR RELIEF

## OBSTRUCTION OF JUSTICE/FRAUD UPON THE COURT

153.   By this reference, Defendant incorporates all paragraphs of this Answer, Counterclaim and Third Party Complaint as if set forth in full herein.

154.   BMG/Klein Defendants intentionally obstructed justice in contravention of the common law duties owed Plaintiff and Federal law, including 18 U.S.C. Section 1503 and thereby injured Plaintiff and committed fraud upon the Court in the Utah Courts and further commit fraud in this Court by its causes of action which extend and perpetuate the prior fraud.

155.   BMG/Klein Defendants had knowledge and notice of the probable, foreseeable and/or existing litigation, bankruptcy proceedings and other proceedings concerning Plaintiff, C&M, Klein and/or BMG.

156.   The BMG/Klein Defendants endeavored to obstruct justice through the intentional failure to disclose evidence relevant and/or material to

probable, foreseeable and existing litigation and bankruptcy proceedings and through the destruction, concealment and suppression of evidence relevant and/or material to probable, foreseeable and existing litigation and bankruptcy proceedings.

157.   The BM/Klein Defendants acted corruptly with the specific intent to obstruct and/or interfere with the litigation and bankruptcy proceedings.

158.   The BM/Klein Defendants conduct interfered with the proceedings because the parties and Court were denied the material and relevant information contained in the evidence that was destroyed, concealed and/or suppressed thereby increasing the cost and time of the proceedings and the fair adjudication and resolution of the respective matters.  And false and misleading representations were made to the Court concerning the evidence.

159.   The BM/Klein Defendants further obstruct justice through the making of the claims in this case with the knowledge that evidence refuting such claims has been destroyed, concealed and/or suppressed by the BMG/Klein Defendants.

160.   Plaintiff is incurring damages by such acts as alleged herein.

## FOURTH CLAIM FOR RELIEF

## CIVIL CONSPIRACY

161.   By this reference, Defendant incorporates all paragraphs of this
Answer, Counterclaim and Third Party Complaint as if set forth in full
herein.

162.   In 1999, Counterclaim Defendant and Third Party Defendants, each of
them, entered into a conspiracy to conceal, suppress and destroy evidence of
conduct, relationships and financial expenditures for the improper purpose
of concealing, suppressing and destroying evidence in order to interfere with
the business of C&M, usurp C&M business opportunities, to prosecute
harmful and abusive legal and governmental proceedings of extending their
individual and mutual benefits as agents of C&M and parties to legal and
arbitration proceedings, obstruct justice and commit fraud upon the Court.

163.   The civil conspiracy anticipated one or more unlawful overt acts
including without limitation to conceal, suppress and destroy evidence of
conduct, relationships and financial expenditures for the improper purpose
of concealing, suppressing and destroying evidence in order to interfere with
the business of C&M, usurp C&M business opportunities, to prosecute
harmful and abusive legal and governmental proceedings of extending their

individual and mutual benefits as agents of C&M and parties to legal and arbitration proceedings, obstruct justice and commit fraud upon the Court.

164. Counterclaim Defendant and Third Party Defendants' actions in forming and pursuing the conspiracy were intentional and willful.

165. As a result of the civil conspiracy, Plaintiff has suffered substantial damages. The damages to Plaintiff resulting from the Counterclaim Defendant and Third Party Defendants' conspiratorial and tortuous acts were apparent and reasonably foreseeable to the Counterclaim Defendant and Third Party Defendants.

166. The Counterclaim Defendant and Third Party Defendants acts and omissions are the result of willful and malicious conduct and/or conduct that manifest a knowing and reckless indifference towards, and a disregard of the rights of Plaintiff. As such, Plaintiff is entitled to an award of punitive damages against Counter claim Defendant and Third Party Defendants in an amount sufficient to punish such parties and to deter others from so conducting themselves. Further, Plaintiff is incurring damages as alleged herein.

## FIFTH CLAIM FOR RELIEF

### AIDING AND ABETTING

167. By this reference, Defendant incorporates all paragraphs of this Answer, Counterclaim and Third Party Complaint as if set forth in full herein.

168. Counterclaim Defendant and Third Party Defendants knowingly induced, aided and abetted the wrongful acts of fraudulent concealment, spoliation, obstruction of justice and fraud upon the Court described above.

169. Such above-described actions of the Counterclaim Defendants and Third Party Defendants were intentional and willful.

170. By aiding and abetting the above described wrongful acts, the Counterclaim Defendant and Third Party Defendants caused Plaintiff to suffer substantial damages in an amount to be proven at trial. These damages were apparent and reasonably foreseeable.

171. Counterclaim Defendants and Third Party Defendants were intentional and willful and malicious conduct and/or conduct that manifests a knowing and wreckless indifference towards, and a disregard of, the rights of Plaintiff. As such, Plaintiff is entitled to an award of punitive damages against Counterclaim Defendants and Third Party Defendants in an amount sufficient to punish such parties and to deter others from so conducting themselves.

172. Plaintiff is incurring damages as alleged herein.

## CLAIMS

173.   The Utah Supreme Court has indicated a willingness to adopt the tort

of spoliation, (obstruction of justice and fraudulent concealment of evidence

are closely related torts) especially acts of spoliation committed by third

parties.  The facts in this case are especially compelling for such adoption

and development of such torts given that the group of actors contains

officers of the Court and the spoliation particularly interfered with both the

courts of the State of Utah and the United States.  Plaintiff asserts the claim

of aiding and abetting alternatively upon the premise that the Utah Courts

have yet to adopt the tort and have typically rejected its application.

However, to the extent that the BM Defendants are permitted to assert the

aiding and abetting claim and it is adopted by this Court for adjudication in

this matter then Plaintiff should correspondingly be permitted to assert his

aiding and abetting claim

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief against

Counterclaim Defendant and Third Party Defendants on its claims:

1.   The attorney's fees and costs reasonably incurred by Plaintiff in

defending and prosecuting this action;

2.      Lost income suffered by Plaintiff as the proximate result of the actions of Counterclaim Defendant and Third Party Defendants;

3.      Punitive damages;

4.      For pre-judgment interest;

5.      For costs of suit incurred herein; and

6.      For such other and further relief for damages alleged herein to be proved at trial and as the Court may deem just and proper.

DATED this 14th day of February 2012



Paul Peters

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of February, 2012, I caused to be delivered electronically by the method indicated below a true and correct copy of the foregoing Answer, Counterclaim and Third Party Complaint to the following:

Thomas R. Karrenberg Jon V. Harper **ANDERSON & KARRENBERG**
50 West Broadway, Suite 700
Salt Lake City, Utah 84101-2006
tkarrenberg@aklawfirm.com
jharper@aklawfirm.com

Joseph E. Wrona Todd D. Wakefield **WRONA LAW FIRM, P .C.**
1745 Sidewinder Drive
Park City, Utah 84060
Wakefield@wasatchlaw.com

David W. Scofield **Peters Scofield**
2455 E Parleys Way #115
Salt Lake City, Utah 84109
dws@psplawyers.com

Richard Burbidge
rburbidge@bmgtrial.com

Jefferson Gross
jwgross@bmgtrial.com

