DAVID W. SCOFIELD - 4140
PETERS | SCOFIELD
*A Professional Corporation*
7430 Creek Road, Suite 330
Sandy, Utah 84093
Telephone: (801) 322-2002
Facsimile: (801) 912-0320
E-Mail: dws@psplawyers.com

ALAN K. HYDE (Pro Hac Vice)
CHRIS W. WELKER (Pro Hac Vice)
**HOLM WRIGHT HYDE & HAYS PLC**
10429 South 51st Street, Suite 285
Phoenix, Arizona 85044
Telephone: (480) 961-0040
Facsimile: (480) 961-0818
E-Mail: ahyde@holmwright.com and cwelker@holmwright.com

Attorneys for Defendants Timothy Olson, High Mountain Partners, LLC,
JJRRNL Trust 1998, and C and M Properties, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BURBIDGE MITCHELL & GROSS, a general partnership,<br><br>Plaintiff,<br><br>-vs-<br><br>TIMOTHY OLSON, an individual; KENNETH W. GRISWOLD, an individual; PAUL H. PETERS, an individual; C AND M PROPERTIES, LLC, a Utah limited liability company; HIGH MOUNTAIN PARTNERS, LLC, a Utah limited liability company; JJRRNL TRUST 1998; and DOES 1-10,<br><br>Defendants. | **Declaration of Peter W. Billings**<br><br>Case No. 2:11cv00640 DB<br>Honorable Dee V. Benson |

I, Peter W. Billings, hereby declare as follows:

1. I am competent to make this declaration based upon personal knowledge.

2. I am the president of Fabian & Clendenin ("Fabian"). Fabian was workout and bankruptcy counsel for C and M Properties, LLC ("C&M").

3. On or about November 20, 2005 I signed an affidavit ("Affidavit") attached as Exhibit 1. In the last sentence of paragraph 10 of that Affidavit, I stated that: "Although I appreciate that it is not necessarily the standard for disclosures on bankruptcy schedules, I did not believe the claims could, at that time without investigation, satisfy the requirements of Rule 11." (emphasis supplied.)

4. Although I think it is already clear from my Affidavit, I did not intend to imply that claims against "insiders, former insiders, former lenders, lenders and former professionals" could never satisfy Rule 11. My point was that such claims needed to be investigated before Rule 11 could be satisfied and at the time the schedules were filed in January 2002, no investigation had taken place.

5. In fact, after filing the schedules, Fabian did investigate and did file claims against Robert Sacks, Larry Sacks and Ray Klein, who were insiders and/or former insiders and with respect to the Sacks, lenders and/or former lenders.

6. I have never investigated possible malpractice claims against Burbidge & Mitchell, and, therefore, have no opinion whether, after investigation, such claims could satisfy the requirements of Rule 11.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES AND THE STATE OF UTAH THAT THE FOREGOING IS TRUE AND CORRECT.**

DATED this 6th day of April, 2013.

_____
Peter W. Billings

# EXHIBIT 1

4851-4659-7907, v. 1

Peter W. Billings, A0330
Douglas J. Payne, A4113
FABIAN & CLENDENIN,
 A Professional Corporation
Twelfth Floor
215 South State Street
P.O. Box 510210
Salt Lake City, Utah 84151
Telephone: (801) 531-8900

Brad Holm (Utah Bar No. 01521)
Alan K. Hyde (pro hac vice)
HOLM WRIGHT HYDE & HAYS PLC
10429 South 51st Street, Suite 285
Phoenix, Arizona 85044
(480) 961-0040

Attorneys for Plaintiff Reorganized Debtor

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br>C & M Properties, LLC, a Utah limited liability company,<br><br>Debtor. | **Bankruptcy No. 01-38555 GEC**<br><br>Chapter 11 |
| C & M Properties, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Richard D. Burbidge, an individual; Jefferson W. Gross, an individual; Burbidge & Mitchell, a Utah partnership; Richard D. Burbidge, Inc., a Utah corporation; Stephen B. Mitchell, Inc., a Utah corporation; Jefferson W. Gross, P.C., Inc., a Utah corporation; and Doe Defendants 1-10,<br><br>Defendants. | **Adv. No. 03P-2024 GEC**<br><br><br><br>**SECOND AFFIDAVIT OF PETER W. BILLINGS** |

357319_1

Peter W. Billings, being first duly sworn upon his oath, deposes and states as follows:

1.  Fabian & Clendenin ("Fabian") was counsel to C and M Properties, L.L.C. ("C&M") for several months prior to its bankruptcy filing and during the bankruptcy proceeding. I served as lead counsel in that representation. Given the serious nature of the conclusions drawn by the Court in its Order Denying Motion For Summary Judgment dated July 23, 2003 ("Order"), C&M has waived the attorney/client privilege with respect to the matters in this affidavit and directed me to provide the following information to the Court.

2.  I first became involved with C&M when I met with Jonathan O. Hafen ("Hafen"), counsel for High Mountain Partners and M. Steven Marsden, counsel for Wolf Mountain Resorts to discuss Fabian being retained to represent C&M with respect to a possible bankruptcy filing by C&M. That meeting occurred on October 2, 2001. I did not attend a meeting of the members of C&M, including Raymond O. Klein ("Klein") until October 23, 2001. Thus, contrary to paragraphs 4 and 5 of the affidavit of Mr. Klein's affidavit and paragraphs 9 and 11 of the "Uncontested Facts" on page 3 of the Court's Order, I was not present at meetings of C&M members held on September 13, 2001 and on October 2, 2001. However, the substance of paragraph 5 of Mr. Klein's affidavit appears to have been said at an October 23, 2001 meeting of the members of C&M, a meeting which I did attend.

3.  My impression after meeting with the members of C&M was that it was a dysfunctional group, spending time and energy making accusations against each other instead of focusing on resolving the claims of the secured creditors. I told Timothy Olson ("Olson"), manager of C&M and principal of High Mountain, of my overall conclusion soon after the meeting.

4. Some time during the month of October 2001, I learned that Paul Peters, a representative of Wolf Mountain (one of the members of C&M) believed that C&M may have a malpractice claim against Burbidge & Mitchell ("B&M"). I told Mr. Olson that Fabian would not be involved in investigating, let alone pursuing, such a possible claim. Olson stated that he understood that and that, if the potential claim were eventually investigated and pursued, it would probably have to be done by a firm outside of the state.

5. According to Mr. Peters, B&M had asserted in pleadings filed by B&M on behalf of C&M that Mr. Peters had forged some document. Mr. Peters was clearly angry about this assertion. His personal motivation of appearing to want "to get back at" B&M made me discount the validity of any possible claim.

6. Prior to the bankruptcy filing, C&M entered into a settlement agreement involving Mr. Peters. During negotiations of that agreement Mr. Peters took a position that, in my view, was totally unreasonable and irrational. Because a bankruptcy filing by C&M seemed inevitable, it was my strong recommendation that the settlement agreement be subject to bankruptcy court approval, particularly since the settlement involved the payment of money to Mr. Peters, an insider. Mr. Peters was opposed to such a provision. It took considerable effort, including a meeting with raised voices, to finally convince Mr. Peters that the agreement must contain such a provision. That experience led me to further question his judgment.

7. Some time after being retained and prior to the bankruptcy filing, I met with Mr. Richard Burbidge to discuss obtaining the C&M files in B&M's possession. During that meeting, Mr. Burbidge raised the subject of the actions B&M had taken on C&M's behalf and stated that he was prepared to defend any action B&M had taken. I told Mr. Burbidge that I had

heard some discussion of a possible malpractice claim against B&M and assured him that Fabian would have nothing to do with it and that C&M would have to get some other firm to handle it.

8. Some time prior to the filing of C&M's bankruptcy schedules and statement of affairs, I asked Mr. Olson whether he thought C&M had a claim against B&M. Mr. Olson replied that he did not know, but that he intended to go through the exercise of investigating it in order to appease Mr. Peters whose support he needed to stay in control of C&M.

9. I do not recall any conversations concerning how to describe possible claims against Burbidge & Mitchell in C&M's schedules. I am certain, however, that there was no disagreement between Fabian and Mr. Olson over the language in C&M's Schedule B, personal property, at paragraph #20: "Possible claims against insiders, former insiders, lenders, former lenders and former professionals; unknown." C&M, to my knowledge, did not, at the time of the filing of the schedules, know the value of any of those possible claims. At the time of filing of the schedules, there was a collective decision made by Mr. Olson and Fabian that (1) Fabian would determine whether C&M had claims against the Sacks group (the former insiders and former and current lenders) and Mr. Klein and (2) Mr. Olson would seek authority from the C&M members, and later the Court, to retain special counsel to investigate possible claims against B&M. Consistent with that decision, Fabian, after completing its investigation, on May 10, 2002, filed a verified counterclaim and third-party complaint in Adversary No. 02P-2110 GEC asserting claims by C&M against the Sacks group and Klein.

10. From what I knew and observed, Mr. Olson's signature on statements and schedules which did not list the names of "the insiders, former insiders, former lenders, lenders and former professionals" was not driven by any desire to hide these claims from creditors or

from the Court. Instead, I believe Mr. Olson had doubts as to the existence of such claims, as did I. Although I appreciate that it is not necessarily the standard for disclosures on bankruptcy schedules, I did not believe the claims could, at that time without investigation, satisfy the requirements of Rule 11.

11. On February 6, 2002, the members of C&M authorized Olson to retain special counsel to investigate possible claims against B&M. Because there was a possibility that B&M would file a proof of claim, I advised the members that any claim against B&M could possibly be considered as a compulsory counterclaim to such proof of claim filed by B&M. However, to my knowledge, no such counsel was retained during the bankruptcy proceedings. Thus, to my knowledge, no counsel for C&M investigated the existence of any claim against B&M prior to confirmation, let alone estimate the value of such possible claim. Nothing said by Mr. Olson at that February 6th meeting as to other malpractice claims prosecuted by Parr Waddoups, Mr. Hafen's firm, caused me to believe that Olson then had a basis to estimate the value of any claim against B&M. I did not understand Olson to be saying that Mr. Hafen or his firm had investigated the claim against B&M or had any basis to estimate its value.

DATED this 20th day of November, 2005.

_____
Peter W. Billings

SUBSCRIBED AND SWORN to before me this 20th day of November, 2005.

NOTARY PUBLIC
HOLLEY FREEMAN
215 So. State #1200
Salt Lake City, Utah 84111
My Commission Expires
February 23, 2008
STATE OF UTAH

_____
Notary Public

357319_1

5

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2005, I caused to be hand-delivered, a true and correct copy of the foregoing Second Affidavit of Peter W. Billings, to:

>Duane H. Gillman
>Durham Jones & Pinegar
>111 East Broadway #900
>Salt Lake City, Utah 84111

>James S. Jardine
>Matthew R. Lewis
>Ray Quinney & Nebeker
>79 South Main Street
>Salt Lake City, Utah 84111

>United States Trustee
>9 Exchange Place, Suite 100
>Salt Lake City, Utah 84111

*/s/ Mary Ann Beck*