IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BURBIDGE MITCHELL & GROSS, a general partnership,<br><br>    Plaintiff,<br><br><br><br>    vs.<br><br><br>TIMOTHY OLSON, an individual, KENNETH W. GRISWOLD, an individual, PAUL H. PETERS, an individual, C AND M PROPERTIES, LLC, a Utah limited liability company, HIGH MOUNTAIN PARTNERS, LLC, a Utah limited liability company, and JJRRNL TRUST 1998, and DOES 1-10,<br><br>    Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br><br><br>Case No. 2:11-CV-640<br><br>Judge Dee Benson |

Plaintiff Burbidge Mitchell & Gross ("BMG") filed the instant lawsuit against Timothy Olson, C&M Properties, High Mountain Partners, Kenneth Griswold and Paul Peters (collectively "defendants") alleging the tort of wrongful use of civil proceedings based on defendant C&M Properties' pursuit of a malpractice action against plaintiff BMG in Utah state court in January of 2003. The case is now before the court on defendants' motions for summary

judgment.[1]  Defendants contend that there are no genuine issues of material fact that would preclude the court from ruling, as a matter of law, that they cannot be found liable for wrongful use of civil proceedings and the related claims asserted by BMG.

The court heard oral argument on the defendants' motions on February 5, 2014.  At the hearing, BMG was represented by Jason E. Greene, Jon V. Harper, and Thomas R. Karrenberg. Defendants Timothy Olson, High Mountain Partners, LLC, JJRRNL Trust 1998, and C&M Properties were represented by Alan Hyde and David W. Scofield.  Defendant Kenneth W. Griswold was represented by Todd D. Wakefield.  Defendant Paul Peters appeared *pro se*.  Prior to the hearing, the court considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the motions.  On May 5, 2014 the court entered a Docket Text Order granting the defendants' motions.  (Dkt. No. 237.)  This Memorandum Decision and Order sets forth in greater detail the basis for the court's ruling.

## BACKGROUND

This case presents a long history with many twists and turns.  The facts are set forth in detail in the parties' respective memoranda and are repeated here only as necessary.  (Dkt. No. 205, Pl.'s Mem. In Opp'n at xvi-cxxxii; Dkt. No. 190, Defs.' Amended Mot. & Mem. In Support at ix-xliii.)

---

[1]The defendants' motions include: Defendants Timothy Olson, High Mountain Partners, LLC, JJRRNL Trust 1998, and C&M Properties, LLC's Amended Motion for Summary Judgment on All Claims Asserted by Plaintiff (Dkt. No. 190); Defendant Kenneth W. Griswold's Motion for Summary Judgment (Dkt. No. 188), and Defendant Paul Peter's Joinder in Co-Defendants' Motions for Summary Judgment (Dkt. No. 191).

The case centers around the formation of a company, C and M Properties, LLC (hereinafter "C&M"). C&M was created on June 6, 1997 for the purpose of purchasing, developing and/or selling the "Cox and Muller Property" located in Summit County, Utah. (Pl.'s Opp'n at liv.) Although the membership of C&M shifted over time, initially it included Raymond Klein, Kenneth Griswold (for Wolf Mountain),[2] Robert Sacks, and John Shirley.

As a brief but relevant aside, prior to the formation of C&M, Klein had been represented by BMG. In 1996 Klein had hired BMG to defend him in a lawsuit brought by a former business partner, Amir Keyvani, concerning a dispute over the purchase of a parcel of land known as the Kilby Property. BMG represented Klein in the "Keyvani Action" and in February 1997 filed a counter-suit against Keyvani. BMG eventually settled the lawsuit on Klein's behalf. (Pl.'s Opp'n at liii.)

Returning now to C&M, the history of C&M reveals a company that was plagued with the difficult (and what ultimately proved to be impossible) task of balancing C&M's business interests against the business interests of each of the individual partners of C&M. A prime example of the difficulties caused by these competing interests occurred shortly after C&M's formation, and is referred to by the parties as the "Weight Parcel Matter."

In 1998, C&M learned of an opportunity to purchase a piece of land located adjacent to the Cox and Muller property called the Weight Parcel. When the members of C&M gathered to

---

[2]Shortly after C&M's formation, Griswold, manager of Wolf Mountain Resorts, transferred his interest in C&M to Wolf Mountain Resorts ("Wolf Mountain"). The other members of C&M also transferred their respective interests at this time, but these interests were transferred to various trusts or entities that continued to bear the name of the original member. (C&M Operating Agreement, First Amendment, January 1998.)

discuss this opportunity, Sacks disclosed that he had a special relationship with the owners of the Weight Parcel and that C&M "may no longer have the opportunity to purchase the Weight Parcel." (Pl.'s Opp'n at lvii.) Klein understood this to mean that Sacks had been "going around" the interests of C&M in securing the Weight Parcel for his own purposes. (Id.) Upon learning that Sacks was pursuing the Weight Parcel for his individual interests, the other members of C&M met informally and decided that Klein should hire counsel to protect C&M's interest in the opportunity to purchase the Weight Parcel. (Pl.'s Opp'n at lvii.) Klein hired BMG, the same law firm that represented him personally in the Keyvani matter. Eventually, the parties reached an agreement whereby C&M would purchase back Sacks' interest in C&M and C&M was allowed to purchase an option on a portion of the Weight Parcel. BMG represented C&M in the documentation relating to the Weight Parcel settlement and the Sacks buyout. (Id.)

Shortly thereafter, in May of 1999, in need of money following the Sacks' buyout, C&M (through Klein and Shirley) approached Timothy Olson – defendant in this case – about the possibility of acquiring an interest in C&M. In September 1999, Olson, through his company High Mountain Partners, acquired an interest in and became a manager of C&M.[3] Thereafter, Olson made significant additional capital contributions to C&M, rendering him both a creditor and member of C&M. (Pl.'s Opp'n at lxiii.) However, pursuant to the terms of the C&M operating agreement, Klein had the final say on all matters relating to the ordinary course of business. (C&M Operating Agreement at ¶ 9.1(b).)

---

[3] High Mountain Properties is a limited liability company established for the purpose of acquiring a membership interest in C&M. The sole member of High Mountain Properties is the JJRRNL Trust 1998. Olson is High Mountain Properties' manager and the trustee of the Trust.

During the months and years that followed, there were numerous disputes among the members of and/or former members of C&M and/or their counsel, all of which make the history quite complicated.[4] Without recounting the intricacies of these disputes, in sum there were allegations of an alleged "secret transfer" of Wolf Mountain's membership in C&M; accusations of fraud and forgery; and assertions of improper alliances between the various members and/or former members of C&M and their respective representatives. Some of these allegations resulted in the filing of lawsuits – both by C&M and against C&M – and BMG continued to serve as C&M's counsel. During this time, C&M also continued to be managed and controlled by Klein while Olson provided the financial backing to pay BMG's attorneys' fees and other expenses.

Ultimately, however, there came a point in time when the members of C&M could no longer agree with each other nor could they agree on the proper course of action for the future of C&M. Suffice it to say, the ending was not pretty. In the late summer or fall of 2001, Olson informed BMG that he would no longer be paying BMG's attorneys' fees. (Pl.'s Opp'n at xci.) Upon receipt of this information, in September 2001 BMG withdrew as counsel for C&M. (Id.) In October 2001, C&M adopted a resolution removing Klein as manager, accusing him of, among other things, failing to disclose to the other members of C&M that BMG was personally representing him in direct conflict with the interests of C&M. (Id. at xcvii) Finally, on

_____

[4]These related parties include but are not limited to: the aforementioned Griswold, a defendant in this action, who was at one-time a partner in C&M and also the manager of Wolf Mountain; Paul Peters, a defendant in this action, who was general counsel for Wolf Mountain and also the manager of Timberwolf Development, LLC; and Boyd Dyer, who was general counsel for Timberwolf Development and a law professor at the University of Utah College of Law.

December 11, 2001, C&M filed a Chapter 11 bankruptcy petition. Several months later, in the summer of 2002, C&M entered into a Global Settlement Agreement regarding the bankruptcy, and upon confirmation of the bankruptcy plan, in the fall of 2002, High Mountain became the sole member of C&M and Olson became the sole manager.

During this same time period (from approximately August of 2001 through 2002), allegations of a conflict of interest or other inappropriate action on the part of BMG were being raised and discussed by certain individuals including Griswold (of Wolf Mountain), Peters (counsel for Wolf Mountain), Dyer (counsel for Peters) and Olson. Specifically, these individuals suggested that BMG failed to inform C&M that it had personally represented Klein and that BMG had used its position as C&M's counsel to personally benefit Klein. These allegations of wrongdoing or conflict of interest on the part of BMG generated a complaint to the Utah State Bar in early 2002, and ultimately resulted in Olson's decision to initiate a malpractice action against BMG.

On January 13, 2003, Olson, as manager of C&M, filed a malpractice action against BMG in state court. The malpractice action set forth two claims against BMG – breach of fiduciary duty and negligence – and proceeded for eight years. The state court judge ultimately granted BMG's motion for summary judgment and the case was finally dismissed on April 4, 2011.

The state court malpractice action led to the filing of the present lawsuit by BMG a few months later on June 6, 2011. In the case now before the court, plaintiff BMG asserts that the state court malpractice action was baseless and, therefore, by filing the malpractice action Olson

and C&M committed the tort of wrongful use of civil proceedings. Plaintiff BMG claims the malpractice action was "entirely without merit" and was pursued in order to cause BMG to incur extraordinary attorneys' fees and costs in defending the action and to embarrass BMG and its lawyers. (Complaint ¶ 36.) Additionally, BMG claims that C&M engaged in a conspiracy with the other defendants, namely Griswold and Peters, and that these defendants aided and abetted C&M in wrongfully filing and pursuing the malpractice action.

Olson, however, denies that C&M had any improper purpose in filing the malpractice action against BMG and claims C&M had probable cause to pursue the malpractice action after investigating and receiving information from multiple attorneys indicating there were valid and viable claims against BMG. (Defs.' Mem. In Supp. at xliv.) Accordingly, the defendants have moved for summary judgment contending there are no genuine issues of material fact that would preclude the court from ruling as a matter of law that the defendants cannot be found liable for wrongful use of civil proceedings and the related claims asserted by BMG.

## DISCUSSION

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). "[T]he plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

The issue in this case is relatively simple –whether C&M had a sufficient, reasonable basis to file the malpractice action against BMG. BMG asserts that it did not, and therefore C&M committed the tort of wrongful use of civil proceedings.

The legal standard in Utah for a claim of wrongful use of civil proceedings is set forth in Gilbert v. Ince, 981 P.2d 842, 845 (Utah 1999). In Gilbert v. Ince, plaintiff Gilbert (an attorney who represented a client in a bankruptcy matter in 1986), brought suit against defendant Ince, (an attorney who subsequently represented the same client in 1990), alleging that defendant Ince had wrongfully used civil proceedings in filing and maintaining a malpractice action against her. At the conclusion of a jury trial, the judge granted defendant's motion for a directed verdict, finding that plaintiff had failed to prove that defendant lacked probable cause in filing the malpractice action against her. Id. at 844. On appeal, the Utah Supreme Court affirmed the trial court's decision and in doing so adopted the criteria set forth in the Restatement (Second) of Torts.

According to the Restatement and Gilbert v. Ince, wrongful use of civil proceedings consists in "instituting or maintaining civil proceedings for an improper purpose and without a justifiable basis." Restatement (Second) of Torts § § 674-681B. The requisite elements are set forth as follows:

> One who takes an active part in the initiation, continuation, or procurement of
> civil proceedings against another is subject to liability to the other for wrongful

civil proceedings if (a) he [or she] acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and (b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

Gilbert v. Ince, 981 P.2d at 845 (quoting Restatement (Second) of Torts § 674).

With regard to the element of "probable cause," the Utah Supreme Court provided additional guidance, stating:

One who takes an active part in initiation, continuation or procurement of civil proceedings against another has probable cause for doing so if he [or she] reasonably believes in the existence of the facts upon which the claim is based, and ... correctly or reasonably believes that under those facts the claim may be valid under the applicable law.

Id. at 845-46 (quoting Restatement (Second) of Torts § 675).

Applying this standard, in order for BMG to survive C&M's motion for summary judgment, BMG was obligated to provide evidence from which a reasonable jury could conclude that C&M, through Olson, acted "without probable cause and primarily for a purpose other than that of securing proper adjudication of the [malpractice] claim. Restatement (Second) of Torts § 674(a).

Turning to the facts in this case, it is undisputed that Olson, on behalf of C&M, filed the January 2003 malpractice action against BMG based, at least, on the following.

• Olson's personal knowledge that BMG had previously represented Klein in the Keyvani matter and that this prior relationship and representation had not been adequately disclosed. (Dkt. No. 187-11, -121 at 6.)

• Olson's personal knowledge and discovery that BMG had made some efforts to represent Klein, as opposed to C&M, in the Weight Parcel matter. This includes, but is not limited to, a February 18, 1999 letter from BMG to Sacks indicating that BMG had been "retained to represent Raymond O. Klein to pursue and protect his interests respecting C&M" (Dkt. No. 187-12), and a February 24, 1999

letter from BMG to Sacks' counsel referring in the subject line to "Klein v. Sacks" and mentioning "our respective clients, Messrs. Klein and Sacks" (Dkt. No. 187-15).

- Olson's personal experience and perception which suggested that BMG was favoring Klein rather than giving impartial, disinterested advice for the benefit of C&M. Among other things, Olson perceived that BMG inordinately supported Klein in strategy decisions that seemed increasingly contrary to the best interest of C&M, BMG suggested that Klein should be compensated for his time, and BMG advocated against Klein's removal as a manager. (Dkt. No. 187-32, 33, 39, 45 & 121 at 6-7.)

- Billing records that suggested concurrent representation of Klein and C&M. This was based on Olson's review of numerous invoices, checks and other payment evidence relating to BMG's representation of Klein and C&M over the years. (Dkt. No. 187-11, 44, 80, 88 & 121 at 7.)

- The July 23, 2003 decision and finding by Bankruptcy Judge Glen Clark stating: "Prior to and during C&M's representation by [BMG], Klein was separately and personally represented by [BMG]." (Dkt. No. 187-101, Order Denying Summ. J. at 3.) Whether Judge Clark's findings were correct or incorrect, they were among the information Olson considered in deciding to file the malpractice action. The Restatement (Second) of Torts states "a decision by a competent tribunal in favor of the person initiating the civil proceedings is conclusive evidence of probable cause. This is true although it is reversed upon appeal and finally terminated in favor of the person against whom the proceedings were brought." Id. § 675, cmt. b. Accordingly, even though BMG ultimately prevailed in the malpractice action before Judge Maughan, that does not eliminate the fact that a different judge, Judge Clark, expressly stated in his findings there had been concurrent representation.

- Legal advice from Boyd Kimball Dyer. Mr. Dyer obtained his law degree from Harvard in 1968 and was a law professor at the University of Utah College of law for 36 years (from 1971 through 2007). For the majority of those years, Mr. Dyer taught Business Planning and incorporated relevant aspects of professional ethics into his course work. In December of 2002, Mr. Dyer met with Olson at the law school and Mr. Dyer informed Olson that in his professional opinion "C&M had valid claims for legal malpractice and breach of fiduciary duties against [BMG]." (Dkt. No. 187-112, Dyer Decl. at 1, 6.)

- Legal advice from Paul J. Mooney. Mr. Mooney is a reputable attorney, practicing in Arizona, with an impressive resume and over 30 years of experience

practicing law. Mr. Mooney and Olson have known each other since 1975 and during that time Mooney has represented Olson in a variety of legal matters. In addition to being an attorney and legal advisor, Mr. Mooney was a long-time, trusted friend. (Dkt. No. 187-111, Mooney Decl. at 2.) Based on his review of information provided by Olson and lengthy discussions with Olson, Mr. Mooney stated that it was his "professional opinion that C&M had strong claims for legal malpractice and breach of fiduciary duties against [BMG]." (Id. at 8.) Mr. Mooney's opinions as to the validity of the claims were so strong that he offered to represent Olson but felt it "might be more cost-effective to hire someone admitted in both Arizona and Utah." (Id.)

Based on these facts, the court finds that C&M had facts sufficient to justify its belief that BMG had breached the fiduciary duties owed to C&M and to reasonably believe that it could potentially convince a judge or jury to rule in its favor. Accordingly, the court finds that no jury could reasonably find that defendants' malpractice action was not supported by probable cause as that standard is interpreted by the Utah Supreme Court in Gilbert v. Ince, 981 P.2d 841 (Utah 1999). Because a lack of probable cause is indispensable to maintaining the present cause of action for wrongful use of civil proceedings, the court need not address the second prong of improper purpose.[5]

## CONCLUSION

In sum, the court concludes that no jury could reasonably find that the state-court malpractice action, filed by the Olson defendants, was not supported by probable cause as that

---

[5]This is not to say that there was malpractice. In fact, this court sees no evidence of malpractice, and that question was resolved in BMG's favor when Judge Maughan granted BMG's motion for summary judgment in state court. Rather, the task before this court is to objectively examine whether the plaintiff's lawsuit satisfies the requirements of the tort of wrongful use of civil proceedings. As stated above, the court concludes that no reasonable juror could so find.

standard is interpreted by the Utah Supreme Court in <u>Gilbert v. Ince</u>, 981 P.2d 841 (Utah 1999).[6]

Because plaintiff has failed to establish the underlying claim for wrongful use of civil

proceedings, plaintiff's related claims of civil conspiracy and aiding and abetting wrongful use

of civil proceedings likewise fail. Therefore, the court GRANTS defendants' motion for

summary judgment and plaintiff's Complaint is dismissed, with prejudice.

It is so ordered.

DATED this 23rd day of May, 2014.

_____

Dee Benson
United States District Judge

---

[6]In reaching this conclusion, the court is also mindful that wrongful use of civil proceedings is a disfavored cause of action. <u>Rusakiewicz v. Lowe</u>, 556 F.3d 1095, 1106 (10th Cir. 2009). "[T]hose who believe themselves to be wronged are entitled to go to court to obtain an adjudication of their grievances, and should not be forced to do so at the peril of becoming defendants in a second suit if they should lose." <u>Id.</u> at 1108.